## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HO WAN KWOK, *et al.*, | ) | Case No. 22-50073 (JAM) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| GENEVER HOLDINGS LLC, | ) | Adv. P. No. 23-05007 (JAM) |
| | ) | |
| Plaintiff | ) | Re: ECF No. 51 |
| | ) | |
| v. | ) | |
| | ) | |
| AIG PROPERTY CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### <u>APPEARANCES</u>

Michael T. McCormack (argued)
Timothy P. Jensen
Amy E. Markim
O'Sullivan McCormack Jensen & Bliss PC
180 Glastonbury Boulevard, Suite 210
Glastonbury, CT 06033

*Counsel for Movant Genever Holdings LLC, Plaintiff*

John F. O'Connor (argued)          Michael P. Thompson
Steptoe & Johnson LLP              Gordon Rees Scully Mansukhani LLP
1130 Connecticut Avenue, N.W.      95 Glastonbury Boulevard, Suite 206
Washington, D.C. 20036             Glastonbury, CT 06033

*Counsel for Respondent AIG Property Casualty Company, Defendant*

## MEMORANDUM OF DECISION AND ORDER
## GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT

Julie A. Manning, United States Bankruptcy Judge

## I.    INTRODUCTION

Before the Court is the Motion for Partial Summary Judgment (the "Motion for Summary Judgment" or the "Motion") filed by plaintiff Genever Holdings LLC ("Genever"), debtor-in-possession.  (ECF No. 51.)[1]  The Motion seeks partial summary judgment on the fourth claim for relief in the amended complaint filed in this adversary proceeding.  (Amended Complaint, ECF No. 77 ¶¶ 137–42.)  In particular, the Motion seeks summary judgment on the fourth claim to the extent it seeks declaratory judgment that defendant AIG Property Casualty Company ("AIG") has a duty to pay Genever's property losses under the terms of a certain insurance policy (the "Policy") in relation to a fire (the "Fire") in a certain luxury residential apartment (the "Apartment") at the Sherry-Netherland Hotel (the "Sherry-Netherland") in New York, New York.  (ECF No. 51.)

This memorandum of decision sets forth the Court's conclusions of law.  Fed. R. Bankr. P. 7052.  For the reasons set forth below, the Motion is **GRANTED IN PART**.

## II.    BACKGROUND

### *The jointly administered Chapter 11 cases*

On October 12, 2020, Genever filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York.  (Genever ECF No. 1.)  On November 3, 2022, the Southern District of New York Bankruptcy Court entered, for the reasons stated

---

[1]  References to the docket of the instant adversary proceeding will be styled "ECF No. ___." References to the docket of the Chapter 11 case of *In re Genever Holdings LLC*, Case No. 22-50592 (JAM) will be styled "Genever ECF No. ___."  References to the docket of *In re Kwok*, Case No. 22-50073 (JAM) will be styled "Main Case ECF No. ___."

therein, a Memorandum of Decision and Order Granting Joint Motion to Transfer Venue to this Court (the "Transfer Order").  (Genever ECF No. 225.)  Genever is a debtor-in-possession.

Genever is a New York limited liability company.  Genever is wholly owned by Genever Holdings Corporation ("Genever Parent" and together with Genever, collectively, the "Genever Entities").  Genever Parent is a British Virgin Islands ("BVI") entity whose only business purpose is ownership of Genever.  When Genever filed its bankruptcy petition, Mr. Ho Wan Kwok was the sole owner of Genever Parent.

Genever's sole business purpose is holding the Apartment pursuant to the terms of a proprietary lease (the "Proprietary Lease") entered into between Genever and the Sherry-Netherland, a cooperative housing corporation located at 781 Fifth Avenue, New York, New York 10022.[2]  The Apartment is comprised of all apartment space on the 18th floor at the Sherry-Netherland.  In accordance with the Proprietary Lease, Mr. Kwok and other members of his family reside at the Apartment.

On February 15, 2022, Mr. Kwok filed a voluntary Chapter 11 petition in this Court. (Main Case ECF No. 1.)  Since that date, Mr. Kwok's interest in Genever Parent has been property of Mr. Kwok's bankruptcy estate.[3]

On July 8, 2022, Mr. Luc A. Despins was appointed as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate of Mr. Kwok.  (Main Case ECF No. 523.)  *See In re Kwok*,

---

[2]  Genever also owns Apartment MR 2219 and Apartment MR 719 at the Sherry-Netherland pursuant to the Proprietary Lease.

[3]  While Genever's Chapter 11 case was proceeding in the United States Bankruptcy Court for the Southern District of New York, the ultimate beneficial ownership of the Genever Entities and the Apartment was disputed between Mr. Kwok's creditors and an entity nominally owned by Mr. Kwok's son, Bravo Luck Limited.  This dispute, however, has been resolved by stipulated dismissal of certain adversary proceedings in favor of Mr. Kwok's estate.  (*See Despins v. Bravo Luck Ltd. (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05027 (JAM) (Bankr. D. Conn. Aug. 30, 2023), ECF No. 118).

640 B.R. 514 (Bankr. D. Conn. 2022) (appointing a Chapter 11 trustee).  On August 10, 2022,

the Court entered an order (the "Corporate Governance Order") confirming, among other things,

that the Trustee owns and controls Genever Parent – and, through it, Genever and the Apartment

– for the benefit of Mr. Kwok's bankruptcy estate.  (Main Case ECF No. 717.)

After the entry of the Corporate Governance Order, (i) the Trustee caused Genever Parent

to also file a voluntary Chapter 11 petition (*In re Genever Holdings Corp.*, Case No. 22-50542

(JAM) (Bankr. D. Conn. Oct. 11, 2022), ECF No. 1); and (ii) the Transfer Order entered.  Since

November 21, 2022, the Chapter 11 cases of Mr. Kwok, Genever, and Genever Parent are jointly

administered under the caption of Mr. Kwok's case.  (Main Case ECF Nos. 970, 1141; Genever

ECF No. 249.)

*The adversary proceeding*

Early on the morning of March 15, 2023, Mr. Kwok was arrested by the Federal Bureau

of Investigation ("FBI") at the Apartment in relation to a criminal indictment.  (*See, generally*,

*United States v. Guo*, No. 23 cr. 118 (AT) (S.D.N.Y. April 8, 2025) (the "Criminal Action").[4])

Later that day, while the FBI was searching the Apartment, the Fire broke out in the Apartment.

At the time of the Fire, AIG insured Genever for the term March 6, 2023, through March 6,

2024, against, among other things, property loss in relation to the Apartment.

On May 12, 2023, Genever commenced the above-captioned adversary proceeding with a

complaint alleging, among other things, AIG had improperly canceled the Policy[5] and declined

---

[4]  "Guo" is the Mandarin Chinese pronunciation of Mr. Kwok's family name – "Kwok" is the
Cantonese Chinese pronunciation.  In addition to "Ho Wan Kwok", the Individual Debtor is
known as "Kwok Ho Wan", "Wengui Guo", "Guo Wengui", "Miles Kwok", and "Miles Guo",
among other names and *aliases*.
[5]  On July 13, 2023, the Court entered a preliminary injunction enjoining the cancellation of
certain policies, including the Policy.  (ECF No. 32.)  *Genever Holdings LLC v. AIG Prop. Cas.*

coverage for loss resulting from the Fire.  (ECF No. 1.)  The complaint has been subsequently

amended.  (ECF No. 77.)  The amended complaint states five claims for relief:

> 1.      The first claim alleging AIG breached contract by cancelling certain insurance policies, among them the Policy, and seeking monetary damages and injunctive relief (Amended Complaint ¶¶ 94–109, ECF No. 77);

> 2.      The second claim alleging AIG breached contract by denying coverage under certain insurance policies, among them the Policy, and seeking monetary damages (*id.* ¶¶ 110–25);

> 3.      The third claim seeking declaratory judgment that AIG's stated bases for cancellation are factually and legally deficient and, hence, certain insurance policies, among them the Policy, remain in effect for their stated term (*id.* ¶¶ 126–36);

> 4.      The fourth claim seeking declaratory judgment that AIG has a duty under certain insurance policies, among them the Policy, to cover Genever's losses, including but not limited to property losses, in relation to the Fire (*id.* ¶¶ 137–42); and

> 5.      The fifth claim alleging AIG breached the duty of good faith and fair dealing by cancelling certain insurance policies, among them the Policy, and seeking to delay coverage under certain insurance policies, among them the Policy, to provide time to find a reason to deny coverage or to delay payment of Genever's claim and seeking monetary damages, punitive damages, costs of suit, and reasonable attorneys' fees (*id.* ¶¶ 143–64).

AIG has answered the amended complaint and asserted affirmative defenses.  (ECF No. 80.)

On October 6, 2023, Genever filed the Motion for Summary Judgment, seeking partial

summary judgment on the fourth claim and declaratory judgment that the property damage to the

Apartment from the Fire is a covered loss under the Policy.  (ECF No. 51.)  In support of the

Motion, Genever filed (i) a memorandum of law (ECF No. 55); (ii) a Local Civil Rule 56(a)(1)

statement of undisputed facts (the "L.R. 56(a)(1) Statement") (ECF No. 52); (iii) the Declaration

of Luc Despins (the "Trustee Declaration") (ECF No. 53) with attached exhibits (each a "Trustee

Exhibit"); and (iv) the Affidavit of Michael T. McCormack (the "McCormack Affidavit") (ECF

---

*Co. (In re Kwok)*, 662 B.R. 432 (Bankr. D. Conn. 2023), *leave to appeal denied by* Civil No. 3:23-cv-1003 (KAD), 2023 WL 5289454 (D. Conn. Aug. 17, 2023).

No. 54) also with attached exhibits (each a "Genever Exhibit").  On November 10, 2023, AIG filed (a) a memorandum of law in opposition to the Motion (ECF No. 63); (b) a Local Civil Rule 56(a)(2) statement of undisputed facts (the "L.R. 56(a)(2) Statement") (ECF No. 64); (c) the Declaration of Jordon S. Gerber (the "Gerber Declaration") (ECF No. 65); and (d) the Declaration of John O'Connor (the "O'Connor Declaration") (ECF No. 66) with attached exhibits (each an "AIG Exhibit").  On December 1, 2023, Genever filed a reply in further support of the Motion.  (ECF No. 76.)

On January 30, 2024, a hearing was held on the Motion for Summary Judgment.  (*See* Jan. 30, 2024, Hr'g Tr., ECF No. 90.)  At the conclusion of the hearing, the Court took the Motion under advisement.

In consideration of AIG's argument, raised in its objection to the Motion and during the hearing, that it needed more discovery to fully respond to the Motion, the Court determined it was appropriate to not decide the Motion until the conclusion of fact discovery.  At the time of the January 30th hearing, fact discovery was scheduled to close on May 17, 2024.  (ECF No. 62.)  On March 20, 2024, at the request of the parties, the Court extended the deadline to complete fact discovery to June 17, 2024, due to, among other things, complications posed by the Criminal Action.  (ECF No. 103.)

After the close of discovery, a status conference was held on July 30, 2024, to discuss the Motion for Summary Judgment.  (*See* July 30, 2024, Hr'g Tr., ECF No. 109.)  During the status conference, the parties informed the Court that discovery had not proceeded as planned because of the Criminal Action and the related deposition stay entered in the jointly administered Chapter 11 cases.  However, because of Mr. Kwok's conviction and the resulting lifting of the deposition stay on July 19, 2024, (Main Case ECF No. 3327) the parties agreed discovery could resume.

After time for additional discovery, on December 3, 2024, AIG filed a supplemental response to the Motion for Summary Judgment. (ECF No. 142.) Attached to the supplemental response are two additional exhibits (each a "Supplemental AIG Exhibit"). On December 17, 2024, Genever filed a supplemental reply. (ECF No. 143.) Attached to the supplement is a supplemental declaration of Attorney Michael T. McCormack (the "Supplemental McCormack Declaration") and five additional exhibits (each a "Supplemental Genever Exhibit"). The Motion is fully briefed.

Upon review of the supplemental briefing, the Court concludes no additional hearing is necessary. D. Conn. Bankr. L.R. 9014-1(m); Appendix M. Accordingly, this matter is ripe for adjudication.

## III.   JURISDICTION AND VENUE

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District of Connecticut dated September 21, 1984. The issues raised by the Motion are statutorily core. 28 U.S.C. §§ 157(b)(2)(A), (O). Moreover, venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

AIG contests neither this Court's jurisdiction nor venue with respect to this adversary proceeding. (*Compare* Amended Complaint ¶¶ 18–19, ECF No. 77 *with* Answer ¶¶ 18–19, ECF No. 80.)

## IV.   SUMMARY JUDGMENT STANDARD

Upon a motion for summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law." Fed. R. Civ. P. 56(a) *made applicable by* Fed. R. Bankr. P. 7056.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114–15 (2d Cir. 2017) (citing *Anderson*). While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," a movant is not required to "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986). Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

## V.   UNDISPUTED FACTS

Upon review of (i) the facts asserted in the L.R. 56(a)(1) Statement and the responses thereto and additional facts asserted in the L.R. 56(a)(2) Statement; (ii) the Trustee Declaration, the McCormack Affidavit, the Supplemental McCormack Declaration, the Gerber Declaration, and the O'Connor Declaration; (iii) the Trustee Exhibits, Genever Exhibits, Supplemental Genever Exhibits, AIG Exhibits, and Supplemental AIG Exhibits; (iv) the record of this adversary proceeding, the jointly administered Chapter 11 cases, and related adversary proceedings; and (v) other matters of which this Court may take judicial notice, for the purposes of adjudicating the Motion for Summary Judgment, the Court states the following undisputed facts:

### *Genever, the Apartment, and the Policy*

1.      Genever is a limited liability company.  Genever Parent is the sole member of Genever.  Genever Parent's sole business purpose is owning Genever.  Prior to July 8, 2022, Mr. Kwok owned Genever Parent.

2.      Pursuant to the Proprietary Lease, Genever owns the Apartment – which is comprised of the entire 18th floor –, Apartment MR 2219, and Apartment MR 719 in the Sherry-Netherland, which is located at 781 Fifth Avenue, New York, New York 10022.  (Proprietary Lease, Tr. Ex. F.)  At the time of the Fire, Mr. Kwok resided at the Apartment pursuant to the Proprietary Lease.  (*Id.*)

3.      In 2015, Wolfson Insurance Brokerage Inc. ("Wolfson") was approached by Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul Weiss") regarding procurement of insurance for the Apartment.  (Nov. 19, 2024, Depo. Tr. at *52:15–54:7 (Test. of Mr. Adam Wolfson), Supp. AIG Ex. 1.)  Upon request, Paul Weiss provided Wolfson information regarding Mr.

Kwok.  (Nov. 19, 2024, Depo. Tr. at *97:2–17 (Test. of Mr. Wolfson), Supp. Genever Ex. L.)

Paul Weiss also provided Wolfson information regarding Genever and Genever Parent.  (*Id.* at

*99:22–100:22, 102:14–103:12 (Test. of Mr. Wolfson), Supp. Genever Ex. L.)  While Mr. Adam

Wolfson recalls Paul Weiss informed him of Genever Parent and its relationship with Genever,

Mr. Wolfson does not recall exactly what Paul Weiss told him.  (*Id.* at *99:22–100:22, 102:14–

103:12 (Test. of Mr. Wolfson), Supp. Genever Ex. L.)  However, Mr. Wolfson understood

Genever Parent – not Mr. Kwok – would be an additional insured under the proposed insurance

policy's liability coverage.  (*Id.* at *103:5–12 (Test. of Mr. Wolfson), Supp. Genever Ex. L; Feb.

24–25, 2015, Email Chain, Supp. Genever Ex. M.)

4.      Between March 2015 and March 2018, Chubb National Insurance Company

("Chubb") provided coverage (the "Chubb Policy") to Genever.  (Nov. 19, 2024, Depo. Tr. at

*46:8–18, 53:1–9 (Test. of Mr. Wolfson), Supp. AIG Ex. 1.)  Under the liability coverage of the

Chubb Policy, Genever's member, *i.e.*, Genever Parent, was an additional insured.  (Chubb

Policy, Form no. Q0802000 05/85, at *4, ECF No. 34-35 (admitted exhibit during preliminary

injunction hearing); *see* March 3, 2015, Email, Supp. Genever Ex. N.)  Chubb declined to renew

insurance coverage for the Apartment for the March 2018 through March 2019 term because

Genever did not update its fire alarm system.  (Nov. 19, 2024, Depo. Tr. at *46:8–18, 53:1–9

(Test. of Mr. Wolfson), Supp. AIG Ex. 1.)

5.      Since March 2018, Genever has purchased insurance coverage on the Apartment

from AIG.  The insurance coverage includes property insurance and liability insurance coverage

for the Apartment in excess of $28 million under a New York Homeowners Policy, Policy No.

PCG 0061821440, with a term of March 6, 2023, through March 6, 2024, and with limits for

Combined Additions and Alterations and Contents of $28,194,359.00.  (N.Y. Homeowners Policy, Policy No. PCG 0061821440, Genever Ex. C.)

6.      In March 2018, when AIG first provided insurance coverage to Genever, Wolfson informed AIG that Genever was a limited liability company and a holding company of Mr. Kwok that owned the Apartment, which Mr. Kwok used as a primary residence.  (Feb. 26–28, 2018, Email Chain at *AIG000797, Genever Ex. D; Jan. 22–24, 2018 Email Chain at *AIG000802–03; Trust/LLC Questionnaire, Genever Ex. E.)

7.      Also in March 2018, when AIG first provided insurance coverage to Genever, Wolfson told AIG that Mr. Kwok was the sole member and owner of Genever.  (Nov. 19, 2024, Depo. Tr. at *74:22–75:21 (Test. of Mr. Wolfson), Supp. AIG Ex. 1; Feb. 26, 2018, Email, AIG Ex. T.)  AIG does not dispute this was an unintentional misstatement of fact.  (Gerber Decl. ¶ 8.)

8.      The Private Client Group New York Homeowners Policy Underwriting Guidelines provided by AIG state:

> 1.      The policy can be written for an individual or an individual and a spouse, or two unmarried individuals (including individuals registered as domestic partners under New York law) living in the same household, or for a corporate entity, estate, LLC or trust.
>
> 2.      When written in the name of a corporate entity or for an estate or trust the risk insured must represent "personal exposure" not a commercial exposure.

(Private Client Group New York Homeowners Policy Underwriting Guidelines at *NY-UG-3, AIG Ex. F.)

9.      On October 12, 2020, Genever filed a voluntary Chapter 11 petition in the Southern District of New York Bankruptcy Court.  (Genever ECF No. 1.)

### The Trustee takes control of Genever and the Policy is renewed

10.      On February 15, 2022, Mr. Kwok filed a voluntary Chapter 11 petition in this Court.  (Main Case ECF No. 1.)

11.      On July 8, 2022, the Court entered an order appointing Mr. Despins as the Trustee in Mr. Kwok's Chapter 11 case.  (Main Case ECF No. 523.)

12.      On August 10, 2022, the Court entered the Corporate Governance Order in Mr. Kwok's Chapter 11 case.  (Main Case ECF No. 717.)  The Corporate Governance Order states, effective July 8, 2022, the Trustee holds all Mr. Kwok's economic and corporate governance rights in entities controlled by Mr. Kwok for the benefit of Mr. Kwok's bankruptcy estate, including but not limited to Genever Parent.  (*Id.*)  The Corporate Governance Order authorizes the Trustee to replace any officer, director, manager, or similar person or entity controlled by Mr. Kwok and authorizes him to act like any such officer, director, manager, or similar person of any such entity who has been removed.  (*Id.*)

13.      Following entry of the Corporate Governance Order, the Trustee and Mr. Kwok took the necessary steps for the Trustee to obtain corporate control over Genever Parent, which is the sole member of Genever, including transfer of Mr. Kwok's 100% ownership interest in Genever Parent, after which transfer Mr. Kwok has no ownership interest in the Genever Entities or the Apartment.  As of August 4, 2022, Mr. Kwok has no control over the Genever Entities. (Despins Decl. ¶¶ 5–7.)

14.      On September 14, 2022, the Trustee appointed Claire Abrehart of Harneys Corporate Services Limited as the sole director of Genever Parent.  (Despins Decl. ¶ 8.)

15.      On October 11, 2022, Genever Parent filed a voluntary Chapter 11 petition in this Court.  (*In re Genever Holdings Corp.*, Case No. 22-50542 (JAM) (Bankr. D. Conn. Oct. 11, 2022), ECF No. 1.)

16.      On November 3, 2022, Genever's Chapter 11 case was transferred to this Court upon the Trustee's and Genever's joint motion.  (Genever ECF No. 225.)

17.      Since November 21, 2022, the Chapter 11 cases of Mr. Kwok, Genever, and Genever Parent are jointly administered and procedurally consolidated under the caption of Mr. Kwok's Chapter 11 case.  (Main Case ECF Nos. 970, 1141.)

18.      As of December 21, 2022, AIG knew Genever is a debtor in a pending Chapter 11 case because it was informed of and was provided with documents concerning the Genever Entities' Chapter 11 cases.  (Dec. 21, 2022, Email, Genever Ex. A; July 12, 2023, Hr'g Tr. at *145:1–47:13 (Test. of Mr. Gerber), Genever Ex. B.)

19.      Effective January 24, 2023, AIG issued an amended policy to Genever for the term March 6, 2022, through March 6, 2023, to add the Office of the United States Trustee as an additional interest holder in the Apartment.  (N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO-AINT (8/00), Supp. Genever Ex. K.)

20.      In March 2023, AIG, with knowledge of the Genever Entities' and Mr. Kwok's bankruptcy cases and having been informed of the Trustee's appointment in Mr. Kwok's case, renewed the Policy with Genever for the term of March 6, 2023, through March 6, 2024.  (Dec. 21, 2022, Email, Genever Ex. A (attaching document referencing "Luc A. Despins, as Trustee for the Estate of Ho Wan Kwok" in footnote to the caption); July 12, 2023, Hr'g Tr. 107:15–17; 112:20–22 (Test. of Mr. Gerber), Genever Ex. B; N.Y. Homeowners Policy, Policy No. PCG 0061821440, Genever Ex. C.)

### *The Fire, Genever's claim, and AIG's response*

21.      On March 15, 2023, the Apartment and its contents were damaged by the Fire.  (*Compare* Amended Complaint ¶ 61, ECF No. 77 *with* Answer ¶ 61, ECF No. 80.)

13

22.      As a result of the Fire, Genever suffered physical damage to the Apartment and its contents, with losses expected to reach into the millions of dollars.  (Despins Decl. ¶¶ 11–12; *see* Partial Sworn Statement in Proof of Loss, Tr. Ex. G.)

23.      On March 16, 2023, Genever notified AIG of its claim relating to the Fire.  AIG acknowledged receipt of the claim, noting Genever's assertions relating to the Fire and damages therefrom.  (Mar. 16–20, 2023, Email Chain at *AIG_0000869, Genever Ex. H.)

24.      On March 23, 2023, Mr. Karim Schultz, a Litigation Specialist at AIG, drafted a letter (the "March 23, 2023, Reservation of Rights Letter") addressed to Genever and sent it for approval to Mr. Brian Applebee, AVP, Director of Casualty Claims, at AIG.  The March 23, 2023, Reservation of Rights Letter stated that "[t]here is some indication that the fire may have been started intentionally."  (Mar. 22–23, 2023, Email Chain at *AIG_000464, Genever Ex. I.)

25.      On March 23, 2023, Mr. Schultz inquired of Mr. Applebee whether the statement in the March 23, 2023, Reservation of Rights Letter that: "[t]here is some indication that the fire may have been started intentionally" was "too much".  Mr. Applebee approved the letter within three minutes of receipt of the letter.  (Mar. 22–23, 2023, Email Chain at *AIG_000464, Genever Ex. I.)

26.      On March 23, 2023, AIG sent the March 23, 2023, Reservation of Rights Letter to the Trustee.  (Despins Decl. ¶ 13; March 23, 2023, Reservation of Rights Letter at *4, Tr. Ex. H.)

27.      On April 17, 2023, Mr. Schultz and Ms. Cara Digiovanna of AIG were informed by the insurer for Sherry-Netherland, FM Global, that FM Global's engaged fire expert consultant had finalized his investigation and found the cause of the fire to be undetermined.

28.      On April 17, 2023, AIG – through counsel – sent a letter (the "April 17, 2023, Reservation of Rights Letter") to the Trustee regarding, among other things, AIG's reservation of

rights with respect to coverage and exclusions under the Policy.  (April 17, 2023, Reservation of Rights Letter, AIG Ex. I.)

29.     In the April 17, 2023, Reservation of Rights Letter, AIG informed Genever it was conducting an investigation into the Fire "under a strict reservation of rights."  (April 17, 2023, Reservation of Rights Letter, AIG Ex. I.)

30.     In the April 17, 2023, Reservation of Rights Letter, AIG also stated:

> The Policy does not obligate AIG to make repairs or incur repair costs for claims while it is still investigating whether the claims are covered under the Policy.

(April 17, 2023, Reservation of Rights Letter, AIG Ex. I.)

31.     In the April 17, 2023, Reservation of Rights Letter, AIG informed Genever that:

> While AIG engaged Westfair Restoration to complete select cleaning of the elevator corridors and hallways in order to protect and preserve the insured unit and to mitigate potential damage to the building or any other units, it did so under a reservation of rights and did not commit to any additional cleanup or remediation.  Given the unusual circumstances regarding the fire that originated at the insured unit, AIG does not intend to take any further action in respect to repair or remediation at this time.

(April 17, 2023, Reservation of Rights Letter, AIG Ex. I.)

32.     In the April 17, 2023, Reservation of Rights Letter, AIG informed Genever it had certain duties under the Policy, stating:

> Your Duties After a Loss
>
> In the event of an occurrence which is likely to involve this policy or if you or any other insured **person** under this policy is sued in connection with an occurrence which may be covered under this policy, you or an insured **person** must:
>
>> . . . .
>>
>> 4.     Protect the property from further damage.  If repairs to the property are required, you must:
>>
>>> a.     Make reasonable and necessary repairs to protect the property; and

          b.      Keep an accurate record of all repair expenses.

(April 17, 2023, Reservation of Rights Letter, AIG Ex. I (ellipsis in original).)

33.      On April 21, 2023, Genever submitted – through Mr. John Panico of Affiliated Adjustment Group, Ltd. a Partial Sworn Statement in Proof of Loss ("Partial Proof of Loss") to AIG seeking $391,047.97 in coverage for emergency repair expenses.  (Partial Proof of Loss, AIG Ex. L.)

34.      On April 25, 2023, AIG issued "Notices of Cancellation of Insurance", purporting to cancel certain insurance policies that AIG issued to Genever, including the Policy, effective May 31, 2023.  (Notice of Cancellation of Insurance, AIG Ex. J.)

35.      The notice of cancellation for the Policy informed Genever: "**IF YOU HAVE ANY QUESTIONS REGARDING TERMINATION, PLEASE CONTACT THIS COMPANY'S REPRESENTATIVE AT: Wolfson Insurance Brokerage, Inc. 358 Fifth Avenue, 8th Floor New York, NY 10001 (212) 683-2622**".  (Notice of Cancellation of Insurance, AIG Ex. J.)

36.      On April 26, 2023, AIG rejected the Partial Proof of Loss because (i) "AIG has not requested this proof of loss" and (ii) AIG "has not made a determination on coverage under the Policy."  (April 26, 2023, Letter, AIG Ex. M.)

*Genever commences adversary proceeding and obtains injunctive relief*

37.      On May 12, 2023, Genever commenced this adversary proceeding.  (ECF No. 1.)

38.      On May 15, 2023, Genever filed a Motion for Preliminary Injunction (the "Injunction Motion"), seeking an order enjoining AIG from cancelling the Policy and certain other policies pursuant to the Notices of Cancellation.  (ECF Nos. 2–3.)

16

39.        On May 19, 2023, AIG sent a letter (the "May 19, 2023, Letter") to Mr. Panico in

relation to the Partial Proof of Loss, stating:

> . . . AIG is willing to pay reasonable costs for this additional remediation of the 18th
> Floor of 781 Fifth Avenue, New York, NY.  While AIG is willing to pay your preferred
> vendor, All City Restoration, the attached estimate from Westfair Restoration (a company
> who has already performed work on site) indicates that the work can be performed for
> $169,540.12.  Westfair also believes that contents can be cleaned on site, and AIG will
> not pay for moving or storage costs, which it believes are unnecessary.
>
> Based on the above, AIG will agree to forward a $25,000 starting fee directly to All City
> and then monitor the ongoing progress and costs as they are incurred.  Anything in excess
> of the attached Westfair estimate will require specific approval from AIG.

(Despins Decl. ¶ 15; May 19, 2023, Letter, Tr. Ex. J.)

40.        In the May 19, 2023, Letter, AIG stated:

> AIG's willingness to advance these funds is subject to a strict reservation of rights,
> including the right to seek recovery of these funds in the event that AIG's investigation
> results in a determination that Genever's Claim is not covered under the Policy.
>
> Under the Policy, the duty to mitigate damage is the responsibility of the insured,
> Genever.  By agreeing to advance funds for the proposed remediation, AIG neither
> accepts coverage for the Claim nor does it undertake any obligation to manage the
> remediation for which you have sought funds from AIG.  With respect to the Claim and
> the funds AIG agrees herein to advance, AIG reserves all of its rights under the Policy
> and at law, and nothing set forth in this letter serves as a waiver of any of AIG's rights.

(May 19, 2023, Letter, Tr. Ex. J.)

41.        On July 13, 2023, the Court entered an order granting the Injunction Motion and

enjoined AIG from cancelling the Policy and certain other insurance policies until after a

determination of the merits of the complaint, and directed AIG to rescind notices of cancellation

and issue notices of reinstatement to every entity, to which AIG had issued notices of

cancellation.  (ECF No. 32.)

42.        On July 14, 2023, AIG issued notices of reinstatement of the Policy and certain

other insurance policies to Genever.  (Reinstatement Notice, Tr. Ex. K.)

43.     As of November 13, 2023, Genever was current with installments on the Policy's annual premium.  (Gerber Decl. ¶ 24.)

**_Genever's remediation of the Apartment and provision of information to AIG_**

44.     On June 13, 2023, AIG – through its counsel – sent a letter (the "June 13, 2023, Letter") to Genever's counsel, stating "[a]lthough we expressed our disagreement to the Trustee's public adjuster on the potential impact of this transfer on the coverage afforded under the insurance policy issued by AIG, this transfer does not excuse Genever from cooperating as required by the AIG policy" and requesting Genever provide information regarding the Fire and construction, renovation, or electrical work performed between January 1, 2015, and the date of the Fire.  (McCormack Aff. ¶ 13; June 13, 2023, Letter, Genever Ex. J.)

45.     On September 12, 2023, the Court entered an order (the "DIP Financing Order") authorizing the bankruptcy estate of Mr. Kwok to extend $2,000,000.00 debtor-in-possession financing to Genever and Genever Parent for the purpose of baseline remediation (the "Remediation Project") of the Apartment.  (Main Case ECF No. 2193.)

46.     The Remediation Project would be limited to "(i) removing asbestos in the Affected Area, (ii) 'white-boxing'[2] the Affected Area, and (iii) ensuring electrical, plumbing, and other systems in the Affected area comply with the New York City building code, all for the purpose of bringing the Sherry Netherland Apartment into a marketable condition."  (Main Case ECF No. 2113 (Internal footnote 2 states "[a] 'white box', as that term is used in the construction industry, refers to a shell building space that has a finished ceiling and painted walls (usually white), but doesn't have finished flooring or other features.").)

47.     On September 19, 2023, the Court entered an order (the "Remediation Retention Order") authorizing the retention of an architect, "contractors, engineers, consultants, and other

third-party service providers in the ordinary course of the Remediation Project (including as it relates to the removal of asbestos), as may be necessary to remediate the Affected Area". (Main Case ECF No. 2213.)

48.     On September 22, 2023, Genever – through its counsel – provided AIG's counsel documents in response to the June 13, 2023, Letter. (Despins Decl. ¶ 19.)

49.     On September 22, 2023, Genever – through its counsel – submitted proposals to AIG for scope of work and estimates for contractors and other third-party service providers to assist with making certain necessary repairs to the Apartment. (Despins Decl. ¶ 18.)

50.     On May 6, 2024, the Court entered an order expanding the authorization provided by the Remediation Retention Order to "the Cleaning Project, including deconstruction and removal of the ceiling and corridor, cleaning out the plenum (*i.e.*, the interstitial space between the ceiling drywall and the ceiling concrete), and the cleaning of the walls, millwork, and floors)" to remove ash and other debris from the fire. (Main Case ECF No. 3128.)

51.     On July 18, 2024, the Court entered an order raising the financing cap authorized under the DIP Financing Order from $2,000,000.00 to $3,000,000.00. (Main Case ECF No. 3325.)

52.     On March 13, 2025, Genever filed a final status report pursuant to the Remediation Retention Order, reporting the Remediation and Cleaning Projects were completed, respectively costing $932,139.79 and $768,326.70. (Main Case ECF No. 4208; *see* Main Case ECF Nos. 2303, 2436, 2510, 2942, 3043, 3155, 3224, 3289, 3350, 3505, 3794.)

### *Terms of the Policy*

53.     Part II – Property of the Policy (the "Property Coverage") states "[t]his policy covers you against all risks of direct physical loss or damage to your house, contents, and other

permanent structures unless an exclusion applies".  (N.Y. Homeowners Policy, Policy No. PCG

0061821440, Form PCHO (09/06) at *2, Genever Ex. C.)  "In the policy, the words 'you', 'your'

and 'yours' refer to" Genever, the named insured on the Declarations Page of the Policy.  (*Id.*

Form PCHO-DEC-NY (05/13), Form PCHO (09/06) at *1.)  Contents are defined as follows:

> **Contents** means personal property owned by, or in the possession of, you or a **family member**.
>
> For any **residence** listed on the Declarations Page that is a condominium or cooperative, or rental unit, **contents** includes additions, alterations, items of real property, installations or fixtures that you paid for or acquired at your expense along with the **residence**.  The property must be your insurance responsibility under the governing rules of the Condominium or Cooperative Association.

(*Id.* Form PCHO (09/06) at *1.)  The Apartment is the residence listed on the Declarations Page.

(*Id.* Form PCHO-DEC-NY (05/13), Form PCHO (09/06) at *2.)

      54.      The Policy defines "[i]nsured person" as follows:

> **a.**      You or a **family member;**
>
> **b.**      An Additional Insured named in the policy;
>
> **c.**      Any person given permission by you or a **family member** to use a vehicle or **watercraft** covered under this policy with respect to their legal responsibility arising out of its use; or
>
> **d.**      A **spouse**.  A **spouse** is a marriage partner.  The term **spouse** also includes an individual registered under state law as a domestic partner of the **insured person** shown on the Declarations Page.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *1, Genever

Ex. C.)  As noted above, "you" refers to Genever.  (*Id.* Form PCHO (09/06) at *1.)  Genever – a

limited liability company – has no family members or spouses.  (*Id.* Form PCHO (09/06) at *1.)

The Policy does not cover any vehicles or watercraft.  (*See, generally*, *id.*)  No additional

insureds are listed in the Property Coverage.  (*Id.* Form PCHO (09/06) at *1–9.)  Part A of the

20

Insured Person Endorsement attached to the Policy is not filled in. (*Id.* Insured Person Endorsement.) Part B of the Insured Person Endorsement attached to the Policy states:

> **B.**     With respect to coverage provided by this endorsement, the following additional provisions apply:
>
> If the first named insured shown on the Declarations Page of this policy is a Limited Liability Corporation, or Trust, the following provisions apply:
>
> Name of Entity: Genever Holdings, LLC
>
> **Residence** Address: 781 Fifth Avenue, 18th Floor, New York, NY 10022
>
> **PART III – LIABILITY,** only applies to an **occurrence** arising out of the ownership of the **residence** listed above. Additionally, the limited liability corporation members and managers of the limited liability corporation, trust, or trustees are also an **Insured Person** with respects to the ownership of the **residence**.

(*Id.* Insured Person Endorsement.)

55.     The Property Coverage provides "we will pay Replacement Cost", which is defined as "the **reconstruction cost** of your **house** or **other permanent structures,** up to the coverage limit shown for that location on your Declarations Page, for each **occurrence**", to Genever for loss covered under the Property Coverage of the Policy. (N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO-DEC-NY (05/13) (stating payment basis is replacement cost), Form PCHO (09/06) at *2, Genever Ex. C.) In the Policy, "[t]he words 'we', 'us', 'our' and 'ours'" refer to AIG. (*Id.* Form PCHO-DEC-NY (05/13), Form PCHO (09/06) at *1.) The location listed on the Declarations Page is the Apartment. (*Id.* Form PCHO-DEC-NY (05/13).) The Property Coverage further provides "[w]e will pay up to the coverage limit for **contents** for that location, for each **occurrence**" when "a loss occurs to **contents** located at a **residence** with **contents** coverage" and the residence is listed on the Declarations Page. (*Id.* Form PCHO (09/06) at *3.)

56.     The Policy defines reconstruction cost as follows:

**Reconstruction Cost** means the lesser of the amount at the time of the loss required to:

a.      Restore or repair a structure; or

b.      Replace or rebuild a structure at the same location;

with materials of like kind and quality.  **Reconstruction cost** does not include any amount required for the excavation, replacement or stabilization of land under or around a structure.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *2, Genever

Ex. C.)

57.      The Property Coverage contains "Intentional Acts" and "Dishonest Acts"

exclusions as follows:

**21.**    Intentional Acts

We do not cover any loss caused by any act, whose consequences could have been foreseen by a reasonable person, committed:

a.      By or at the direction of you, your spouse or a **family member;** and

b.      With the intent to cause loss or damage.

**22.**    Dishonest Acts

We do not cover any loss caused by any dishonest or criminal act by, or at the direction of, you or any **family member**.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *8, Genever

Ex. C.)  AIG has asserted these exclusions as a defense to Genever's property coverage claim.

(ECF No. 80.)

58.      The Property Coverage contains a "Business Property" exclusion as follows:

**11.**    **Business** Property

We do not cover any loss to **business** property.  This exclusion does not apply to coverage provided under PART II – PROPERTY, Additional Coverage, **Business** Property.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *8, Genever

Ex. C.)  AIG has asserted this exclusion as a defense to Genever's property coverage claim.

(ECF No. 80.)

59.     The Property Coverage contains a "Faulty, Inadequate or Defective Planning"

exclusion as follows:

**8.**     Faulty, Inadequate or Defective Planning

We do not cover any loss caused by faulty, inadequate or defective:

**a.**     Planning, zoning, development, surveying, siting;

**b.**     Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**c.**     Materials used in repair, construction, renovation or remodeling; or

**d.**     Maintenance;

of part or all of any property whether on or off the **residence.**

However, we do insure ensuing covered loss unless another exclusion applies.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *7, Genever

Ex. C.)  AIG has asserted this exclusion as a defense to Genever's property coverage claim.

(ECF No. 80.)

60.     The Property Coverage contains a "Tenant Property" exclusion as follows:

**15.**     Tenant Property

We do not cover any loss to property of roomers, boarders, or other tenants.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO (09/06) at *8, Genever

Ex. C.)  AIG has asserted this exclusion as a defense to Genever's property coverage claim.

(ECF No. 80.)

61.      The Policy contains a "Concealment or Fraud" condition as follows:

Concealment or Fraud

We do not provide coverage for the **insured person** who, whether before or after a loss has:

**1.**      Intentionally concealed or misrepresented any material fact or circumstance; or

**2.**      Engaged in fraudulent conduct;

relating to this insurance.

(N.Y. Homeowners Policy, Policy No. PCG 0061821440, Form PCHO-AENY (09/06) at *2,

Genever Ex. C.)  AIG has asserted a defense that Genever's claims are barred because of

misrepresentations and/or non-disclosure of information in connection with procuring insurance

policies from AIG.  (ECF No. 80.)

## VI.    DISCUSSION

### A.    Legal Standard

Under New York law,[6] "[r]ules for the construction of contracts of insurance do not differ

from those to be applied to the construction of other contracts."  *McGrail v. Equitable Life*

*Assurance Soc'y of U.S.*, 55 N.E.2d 483, 486 (N.Y. 1944); *accord Olin Corp. v. Am. Home*

*Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012) ("Under New York law, insurance policies are

---

[6]  Genever and AIG have both assumed New York law applies in their arguments.  The Court agrees with the parties.  Generally, this Court applies Connecticut choice of law rules.  *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  Connecticut courts apply the Restatement (Second) of Conflict of Laws with respect to actions on contract, including actions on insurance contracts.  *Reichhold Chems., Inc. v. Hartford Accident & Indem. Co.*, 703 A.2d 1132, 1137–38 (Conn. 1997); *see also Gen. Accident Ins. Co. v. Mortara*, 101 A.3d 942, 945–47 (Conn. 2014) (citing *Am. States Ins. Co. v. Allstate Ins. Co.*, 922 A.2d 1043, 1047–48 (Conn. 2007)).  While the Policy does not appear to contain a choice of law provision, the Court concludes New York law applies because Genever and AIG understood New York to be the location insured risk, *i.e.*, the Apartment, and no other state has been asserted to have a more significant relationship to the Apartment, the transaction, or the parties with respect to the Policy.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 193.

24

interpreted according to general rules of contract interpretation.") (internal footnote omitted). Unless the terms of an insurance policy are ambiguous, policy interpretation is a question of law susceptible to summary judgment. *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973); *accord K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) ("Under New York law, the initial interpretation of a contract 'is a matter of law for the court to decide.'  Where there are alternative, reasonable constructions of a contract, *i.e.,* the contract is ambiguous, the issue 'should be submitted to the trier of fact.'") (internal citations omitted).  In determining whether a policy is ambiguous, "insurance contracts must be interpreted according to common speech and consistent with the reasonable expectations of the average insured".  *Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500, 502 (N.Y. 2011).

### B.    Analysis

Genever asserts the Property Coverage provides all-risk insurance.  Under New York law, Genever, "as an all-risk insured, has the burden of establishing a prima facie case for recovery by proving (1) the existence of an all-risk policy, (2) an insurable interest in the subject of the insurance contract, and (3) the fortuitous loss of the covered property." *Int'l Multifoods Corp. v. Comm. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (adopting district court's recitation of the law) (applying New York law).  If Genever establishes a *prima facie* case for coverage, AIG has the burden to defend against coverage by establishing (i) it may rescind the Policy because of Genever's material misrepresentations or fraudulent conduct, *Home Ins. Co. of Ill. (N.H.) v. Spectrum Info. Techs., Inc.*, 930 F. Supp. 825, 835 (E.D.N.Y. 1996); or (ii) "the claimed loss is excluded from coverage" because "an express exclusion in the policy" applies, *Great N. Ins. Co. v. Dayco Corp.*, 620 F. Supp. 346, 351 (S.D.N.Y. 1985).

1.    ***Prima facie* case for coverage**

There is no genuine dispute the Property Coverage provides all-risk insurance.  The unambiguous text of the Property Coverage establishes the existence of all-risk insurance: "This policy covers you against all risks of direct physical loss or damage to your house, contents, and other permanent structures unless an exclusion applies".  (Undisputed Fact 53.)  AIG raises no argument to the contrary.

Similarly, there is no genuine dispute Genever has an insurable interest in the Apartment. It is undisputed Genever owns the Apartment, including certain contents, namely, all additions, alterations, items of real property, installations or fixtures attached to the Apartment. (Undisputed Fact 2; *see* Undisputed Fact 53.)  The unambiguous text of the Property Coverage provides Genever is an insured and the Apartment is insured property.  (Undisputed Facts 53– 55.)  AIG raises no argument to the contrary.  However, Genever has not put forth factual matter regarding whether it has an insured interest in other contents of the Apartment, namely, personal property.  (*See* Undisputed Fact 53.)  Accordingly, an issue of fact exists regarding its *prima facie* case for coverage regarding these contents of the Apartment.

As to the third element, "[a] loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured."  *Int'l Multifoods*, 309 F.3d at 83 (quoting *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 307–08 (2d Cir. 1987)); *accord* N.Y. INS. LAW § 1101(a)(2).  Genever argues the Fire – the cause of which is not known – resulted in a fortuitous loss to the Apartment and its contents.  AIG argues it needs more time to determine whether Mr. Kwok – or Genever while it was under his control – intentionally caused the Fire or conspired to cause the Fire.

26

The Court concludes there is no genuine dispute of material fact Genever suffered a fortuitous loss to the Apartment and its contents.  AIG concedes the Fire damaged the Apartment and its contents.  (Undisputed Fact 21.)  Genever "need not explain the precise cause of loss", *Int'l Multifoods*, 309 F.3d at 84 (citing *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 77–78 (2d Cir. 1996)), which experts have been unable to determine (Undisputed Fact 27).  While AIG contends further investigation is needed to determine whether Mr. Kwok caused the Fire, Genever is not required to put forward factual material to negate AIG's claims at summary judgment.  *Celotex*, 477 U.S. at 323.  Instead, AIG is required to put forward *some* factual material to support its claims.  *Matsushita Elec. Indus*, 475 U.S. at 586.  To date, however, AIG has presented no factual matter demonstrating a genuine issue of material fact regarding the cause of the Fire – despite being afforded six-hundred twenty-nine (629) days from the date of the Fire to file a supplemental response to the Motion for Summary Judgment.  Moreover, AIG also affirmatively stated it is not contending the Trustee – or Genever while under the control of the Trustee – intentionally caused the Fire.

Because there is no genuine dispute of material fact, the Court concludes as a matter of law Genever has made its *prima facie* case for all-risk coverage of the loss to the Apartment, including certain contents, *i.e.*, all additions, alterations, items of real property, installations or fixtures attached to the Apartment, caused by the Fire.  (*See* Undisputed Fact 53.)  Genever has also established as a matter of law two of the three elements of its *prima facie* case for all-risk coverage of the loss to the Apartment's other contents, *i.e.*, personal property owned by or in the possession of Genever, caused by the Fire.  (*See id.*)  The only issue that remains is whether Genever has an insurable interest in any additional personal property damaged by the Fire.

### 2.      Defenses to coverage

Having determined Genever has made its *prima facie* case for coverage of the loss to the Apartment and certain contents, the Court turns to AIG's defenses to such coverage.  In its opposition to the Motion for Summary Judgment, AIG asserts two defenses to coverage.[7]  First, AIG asserts there is a genuine dispute of material fact as to whether it may rescind the Policy.  Second, AIG asserts there is a genuine dispute of material fact as to whether the intentional or dishonest acts exclusions apply.  In relation to this second argument, AIG asserts there is a genuine dispute of material fact as to whether Genever should be estopped from arguing Mr. Kwok is not an insured under the terms of the Property Coverage.

### i.      Recission for material misrepresentation

AIG argues there is a genuine dispute of material fact as to whether Genever made a material misrepresentation to AIG or engaged in fraud when Wolfson told AIG in 2018 that Mr. Kwok is the sole member of Genever.  AIG argues that if, at trial, such a material misrepresentation or fraud were proven, AIG could rescind the Policy and avoid coverage.  Genever argues this misstatement was neither intentional nor fraudulent and was, furthermore, immaterial.

### a.      Concealment or Fraud condition

There are two legal bases for AIG's argument.  The first basis is the "Concealment or Fraud" condition of the Policy.  It states:

Concealment or Fraud

We do not provide coverage for the **insured person** who, whether before or after a loss has:

---

[7] Unlike in its answer, AIG does not assert in its opposition to summary judgment the business property, tenant property, or faulty, inadequate or defective planning exclusions.

**1.**    Intentionally concealed or misrepresented any material fact or circumstance; or

**2.**    Engaged in fraudulent conduct;

relating to this insurance.

(Undisputed Fact 61.)

The Court concludes there is no genuine dispute of material fact regarding the applicability of the Concealment or Fraud condition.  It is inapplicable as a matter of law.  First, there is no genuine dispute of material fact that Genever – through Paul Weiss – informed Wolfson in 2015 of Genever Parent's ownership of Genever to Wolfson.  (Undisputed Fact 3.)  Indeed, Wolfson understood in 2015 that Genever Parent – but not Mr. Kwok – would be an additional insured under the liability coverage of the Chubb policy, reflecting Wolfson's knowledge that Genever Parent – not Mr. Kwok – was a member of Genever.  (Undisputed Facts 3–4.)  Second, while there is no genuine dispute of material fact that, upon questioning by AIG, Wolfson told AIG in 2018 Mr. Kwok – not Genever Parent – was the sole member of Genever, it is undisputed Wolfson did not intentionally misstate or conceal Genever's ownership to AIG.  (Undisputed Fact 7.)  Finally, AIG has presented no factual material to support Genever or Wolfson having misstated or concealed Genever's ownership when asked by AIG[8] to induce renewal of the Policy for the March 6, 2023, through March 6, 2024, term.

Therefore, AIG has not met its burden to put forward factual material supporting the contention Genever intentionally misrepresented its ownership to AIG or committed fraud.  *Matsushita Elec. Indus*, 475 U.S. at 586.

---

[8]  To be clear, AIG has presented no factual material that it asked Genever or Wolfson about Genever's ownership in connection with renewing the Policy for the March 6, 2023, through March 6, 2024, term.

### b.    Statutory misrepresentation defense

The second basis is the statutory material misrepresentation defense available to insurers under New York law.  A prospective insured has a duty to provide information where a prospective insurer's question "plainly and directly requires it to be furnished."  *Vella v. Equitable Life Assurance Soc'y*, 887 F.2d 388, 392 (2d Cir. 1989).  Where such a duty exists, a misrepresentation is "a [false] statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof."  N.Y. INS. LAW § 3105(a).

A misrepresentation "[i]f material . . . constitute[s] a defense [to coverage], although made innocently and without any feature of fraud; it [is] sufficient that it [is] material as an inducement for the issue of the policy, and [is] untrue."  *E. Dist. Piece Dye Works v. Travelers' Ins. Co.*, 138 N.E. 401, 403 (N.Y. 1923); *accord* N.Y. INS. LAW § 3105; *Mut. Benefit Life Ins. Co. v. JMR Elecs. Corp.*, 848 F.2d 30, 32 (2d Cir. 1988) (citing *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 385 N.Y.S.2d 308, 310–11 (N.Y. App. Div. 1976), *aff'd* 336 N.E.2d 1361 (N.Y. 1977)).  A misrepresentation is material if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract."  N.Y. INS. LAW § 3105(b).  The New York Court of Appeals has expounded upon materiality:

> Misrepresentation in an answer, by affirmation of an untruth or by suppression of the truth, is material where it '*substantially* thwarts the purpose for which the information is demanded and *induces action which the insurance company might otherwise not have taken*.'  The test is whether 'failure to state the truth where there was a duty to speak prevented the insurance company from exercising its choice of whether to accept or reject the application upon a disclosure of all the facts which might *reasonably* affect its choice.'  The question is 'not whether the company *might have issued* the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application *which it might otherwise have refused*.'

*Geer v. Union Mut. Life Ins. Co.*, 7 N.E.2d 125, 129 (N.Y. 1937) (quoting earlier passages of same opinion) (emphasis in original); *JMR Elecs.*, 848 F.2d at 32 (citing *Geer*).

The same undisputed facts discussed regarding the Concealment or Fraud condition narrow the issues. Two issues remain: (i) whether Wolfson's misstatement regarding Genever's ownership was a material misrepresentation; and (ii) whether Wolfson is AIG's agent and, hence, AIG has imputed knowledge of Genever's true statement to Wolfson regarding Genever's ownership. AIG argues Mr. Gerber's prior testimony at the evidentiary hearing on the Injunction Motion, his sworn declaration, and Mr. Wolfson's deposition testimony create a genuine issue of material fact with respect to both issues. Genever argues Mr. Gerber's statements are conclusory and do not prevent summary judgment.

The Court concludes there is no genuine dispute of material fact that, even assuming Wolfson's misstatement is Genever's misrepresentation to AIG, it is an immaterial misrepresentation. Under New York law, a "conclusory statement by an insurance company employee that the company would not have insured the applicant" if it had known the facts misrepresented to the insurance company is not enough to defeat summary judgment – the insurer must rely on other documents, such as its underwriting guidelines. *Pratz v. Wayne Coop. Ins. Co.*, 724 N.Y.S.2d 293, 296 (N.Y. Sup. Ct. 2001) (citing *Wittner v. IDS Ins. Co.*, 466 N.Y.S.2d 480, 481 (N.Y. App. Div. 1983)). AIG's underwriting guidelines do not support Mr. Gerber's testimony. AIG's Private Client Group insures corporate entities – such as Genever and Genever Parent – so long as the risk is a personal rather than corporate exposure. (Undisputed Fact 8.) Here, the risk was a personal exposure: (i) Genever and Genever Parent have no other business purpose other than being holding companies through which Mr. Kwok owned the Apartment; and (ii) until the Fire, Mr. Kwok used the Apartment as a residence

pursuant to the Proprietary Lease.  (Undisputed Facts 1–2, 6.)  Moreover, contrary to AIG's contentions, the existence of Genever Parent does not open AIG to expansive liability.  Genever Parent is only an additional insured under Part III – Liability (the "Liability Coverage") and only for occurrences arising out of the ownership of the Apartment.  (Undisputed Fact 54.)

Because the Court concludes as a matter of law the misstatement would be immaterial even if it were a misrepresentation, the Court does not reach the issue of whether there is a genuine dispute of material fact regarding Wolfson's relationship with AIG.

* * *

For these reasons, AIG has failed to meet its burden at summary judgment to establish a genuine issue of material fact exists in relation to its recission defense both under the terms of the Policy and under New York statutory law.  *Celotex*, 477 U.S. at 323.

### ii.        Intentional or dishonest acts exclusions

As to its second asserted defense, AIG argues there is a genuine dispute of material fact whether Mr. Kwok – or Genever while it was under Mr. Kwok's control – intentionally caused the Fire and, therefore, whether the Intentional or Dishonest Acts exclusions apply.  Genever argues the exclusions are inapplicable because AIG concedes the Trustee – and Genever while it was under his control – did not intentionally cause the Fire and Mr. Kwok is not included in "you", which refers to Genever and its agents.  Genever also argues even if Mr. Kwok were an insured for purposes of the Property Coverage, AIG has produced no factual material to demonstrate a genuine dispute of material fact as to whether Mr. Kwok intentionally caused the Fire.

The Property Coverage contains "Intentional Acts" and "Dishonest Acts" exclusions as follows:

**21.** Intentional Acts

We do not cover any loss caused by any act, whose consequences could have been foreseen by a reasonable person, committed:

a.   By or at the direction of you, your spouse or a **family member;** and

b.   With the intent to cause loss or damage.

**22.** Dishonest Acts

We do not cover any loss caused by any dishonest or criminal act by, or at the direction of, you or any **family member**.

(Undisputed Fact 57.)

Genever is correct that "you" unambiguously does not refer to Mr. Kwok and Mr. Kwok is not a family member of Genever. (Undisputed Fact 54.) AIG argues nevertheless Genever should be estopped from arguing (i) Mr. Kwok is not an additional insured under the Insured Person Endorsement for the purposes of the Property Coverage, including the Intentional and Dishonest Acts exclusions, because Wolfson told AIG Mr. Kwok was the sole member of Genever; and (ii) Mr. Kwok is not in control of Genever because AIG did not know about the Corporate Governance Order. Genever argues it cannot be estopped because (i) even if Mr. Kwok were the sole member of Genever, he would not be an additional insured under the unambiguous language of the Insured Person Endorsement for the purposes of the Property Coverage; and (ii) AIG was on inquiry notice regarding the appointment of the Trustee and Genever Parent's ownership of Genever.

The Court agrees with Genever. The Insured Person Endorsement states:

**B.** With respect to coverage provided by this endorsement, the following additional provisions apply:

If the first named insured shown on the Declarations Page of this policy is a Limited Liability Corporation, or Trust, the following provisions apply:

Name of Entity: Genever Holdings, LLC

**Residence** Address: 781 Fifth Avenue, 18th Floor, New York, NY 10022

**PART III – LIABILITY,** only applies to an **occurrence** arising out of the ownership of the **residence** listed above.  Additionally, the limited liability corporation members and managers of the limited liability corporation, trust, or trustees are also an **Insured Person** with respects to the ownership of the **residence**.

(Undisputed Fact 54.)  Read in context, the final sentence – which starts with the word "additionally" and restricts coverage to occurrences related to ownership of the residence, both of which link it to the previous sentence – is unambiguously restricted to the Liability Coverage, which is the subject of the preceding sentence.  The Property Coverage is not mentioned in Part B of the Insured Person Endorsement or, indeed, anywhere else in the Insured Person Endorsement.  Furthermore, AIG has presented no factual material to establish Genever has a duty to inform AIG of the Corporate Governance Order – AIG has not presented material suggesting it asked about such a change of control when renewing the Policy in March 2023.  *See, Vella*, 887 F.2d at 392.  For these reasons, AIG's estoppel argument does not establish a genuine dispute of material fact.

Genever is also correct AIG presented no factual matter supporting its contention Mr. Kwok intentionally caused the Fire.  Therefore, even if Genever were estopped, AIG has failed to meet its burden on summary judgment with respect to the Intentional and Dishonest Act exclusions.  *Celotex*, 477 U.S. at 323.

## VII.    CONCLUSION AND ORDER

For the reasons stated above, the Motion for Summary Judgment is granted in part.  As a matter of law, the Court concludes Genever has made its *prima facie* case upon the undisputed facts for all-risk coverage of the loss to the Apartment, including certain contents of the Apartment, namely, additions, alterations, items of real property, installations or fixtures attached

to the Apartment, caused by the Fire.  AIG has failed to demonstrate the existence of a genuine dispute of material fact regarding its defenses to such coverage.  Accordingly, Genever is entitled to declaratory judgment that the loss to the Apartment, including certain contents of the Apartment, namely, additions, alterations, items of real property, installations or fixtures attached to the Apartment, caused by the Fire is covered by the Policy.  Furthermore, as a matter of law, Genever has also established two elements of its *prima facie* case upon the undisputed facts for all-risk coverage of the loss to the other contents of the Apartment, namely, personal property owned by or in the possession of Genever, caused by the Fire.

Accordingly, it is hereby

**ORDERED:** The Motion for Summary Judgment is **GRANTED IN PART** as set forth in this Opinion; and it is further

**ORDERED:** Partial summary judgment enters with respect to Genever's fourth claim asserted in the amended complaint.  Under the Property Coverage of the Policy, AIG has a duty to pay Genever's losses to the Apartment, including certain contents of the Apartment, namely, additions, alterations, items of real property, installations or fixtures attached to the Apartment, caused by the Fire.  With respect to loss of other contents of the Apartment, namely, personal property owned by or in the possession of Genever, if Genever establishes an insurable interest, the burden will shift to AIG to show the loss of such contents is excluded from coverage.

Dated at Bridgeport, Connecticut this 15th day of May, 2025.

*Julie A. Manning*
United States Bankruptcy Judge
District of Connecticut